IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Carmen Witherspoon<br><br>Plaintiff,<br><br>vs.<br><br>Virtus Academy of South Carolina,<br><br>Defendant. | Complaint<br>Civil Action Nos.<br><br>**Jury Trial Demanded** |

Plaintiff Carmen Witherspoon, by and through undersigned counsel, alleges as follows:

**I. Nature of the Action**

1. This is an employment discrimination and retaliation action arising from Defendant's treatment of Plaintiff during her employment as School Nurse and the termination of her employment on December 17, 2025.
2. Plaintiff is an African American woman who worked for Defendant from approximately 2022 until her termination.
3. Plaintiff alleges that Defendant subjected her to discriminatory scrutiny and discipline, imposed changing expectations, and terminated her employment because of her race and in retaliation for protected activity.
4. Following Plaintiff's termination, Defendant employed a white nurse as her replacement.

5. Plaintiff seeks back pay, lost benefits, reinstatement or front pay, compensatory damages, declaratory and equitable relief, attorney's fees, costs, and such other relief as the Court deems just and proper.

## II. Jurisdiction and Venue

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.
7. This Court also has jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3).
8. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in Florence County, South Carolina, and Plaintiff worked for Defendant in this District.

## III. Parties

9. Plaintiff Carmen Witherspoon is a resident of Florence County, South Carolina.
10. Defendant Virtus Academy of South Carolina operates a public charter school in Florence County, South Carolina, with its school address at 2407 Pisgah Road, Florence, South Carolina 29501.
11. Defendant employed Plaintiff and controlled the terms and conditions of her employment, including her assignments, supervision, compensation, discipline, and termination.
12. Upon information and belief, Defendant employed at least fifteen employees for each working day in twenty or more calendar weeks during the relevant current or preceding calendar year and was an employer engaged in an industry affecting commerce within the meaning of Title VII.

## IV. Administrative Proceedings

13. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission against Defendant, Charge No. 436-2026-00398, alleging race discrimination and retaliation, including her December 17, 2025 termination.

14. Plaintiff's verified Form 5A and incorporated continuation statement are dated August 4, 2026. Plaintiff's charge was timely filed.

15. On August 21, 2026, the EEOC issued its Determination and Notice of Rights, notifying Plaintiff of her right to bring a civil action.

16. Plaintiff received notice on August 21, 2026, and brings this action within ninety days of receipt.

17. Plaintiff has satisfied the administrative prerequisites to bringing the claims asserted herein.

## V. Factual Allegations

18. During the relevant period, Plaintiff was the only nurse responsible for more than 800 students across Defendant's two campuses.

19. Plaintiff's direct supervisor was Jacqueline "Jackee" Johnston, a white woman who served as Defendant's Chief Operations Officer.

20. Jeriesha Epps served as Defendant's Human Resources Director. Toni Brandt served as Defendant's Chief Executive Officer and communicated the decision to terminate Plaintiff's employment.

21. On or about September 19, 2025, Plaintiff complained to Epps concerning Johnston's disproportionate scrutiny, repeated corrective communications, dismissive responses, and punitive treatment.

22. Plaintiff requested assistance in establishing clear and consistent expectations for her work.

23. Plaintiff subsequently raised additional concerns about changing expectations, delays in responding to leave requests, requirements that she arrange her own coverage, and Johnston's continuing treatment of her.

24. On November 12, 2025, Plaintiff submitted a written complaint stating that she believed Johnston was retaliating against her for her earlier complaints to Human Resources.

25. Human Resources acknowledged the complaint and scheduled a meeting for November 13, 2025, representing that Plaintiff's complaint and next steps would be discussed.

26. At the November 13 meeting, Epps did not substantively address Plaintiff's complaint or provide findings concerning it. Instead, Epps presented Plaintiff with a sixty-day Performance Improvement Plan.

27. Plaintiff had not been advised that the meeting would involve disciplinary action. The PIP was presented approximately one day after Human Resources acknowledged her complaint.

28. The PIP alleged deficiencies involving medication procedures, response times, documentation, attendance, and professional conduct.

29. Plaintiff disputed material allegations and requested the specific incidents, dates, and supporting records. Human Resources declined to provide those particulars, stating that a PIP was not an investigative process.

30. Plaintiff explained that the scheduling requirements imposed upon her conflicted with medication passes, emergencies, and the unpredictable needs of students on two campuses. Management acknowledged that urgent student care had to take priority.

31. Defendant also changed requirements after Plaintiff completed assigned work. After Plaintiff submitted an Individual Health Plan audit in the requested format, Human Resources acknowledged that printing the individual plans had not been part of the original assignment but imposed that additional requirement and a new deadline.

32. Approximately one week before December 5, 2025, a student's mother brought newly prescribed seizure medication to school in its original pharmacy-labeled container bearing the physician's dosing instructions.

33. The mother verbally authorized administration and was present when Plaintiff administered one dose. Plaintiff had not completed the student's Individual Health Plan or documented that administration at that time.

34. Plaintiff was absent from work on December 5, 2025, after notifying Johnston under the call-out procedure. During Plaintiff's absence, school personnel discovered that written medication authorization and an Individual Health Plan were not available for the student.

35. Following Plaintiff's call-out, Johnston sent several corrective emails within a short period, including concerns Johnston stated had existed for weeks. Plaintiff reported the timing and escalation to Human Resources.

36. In November 2025, before her termination, Plaintiff submitted an EEOC inquiry concerning her treatment by Defendant.

37. On December 8, 2025, Brandt and Epps met with Plaintiff concerning the medication issue. Defendant placed Plaintiff on paid administrative leave and discontinued her access to school email and student-information systems.

38. Defendant subsequently characterized Plaintiff as having admitted that she disregarded medication protocols because she was personally friends with the student's mother. Plaintiff disputes Defendant's characterization of her explanation and the circumstances surrounding the administration.
39. Plaintiff requested identification of the specific written medication policy Defendant contended she violated. Defendant referred Plaintiff to her job description.
40. On December 17, 2025, Defendant terminated Plaintiff's employment, citing medication and documentation concerns, other performance concerns, and Plaintiff's alleged refusal to answer management's questions.
41. Defendant terminated Plaintiff approximately thirty-four days after placing her on the sixty-day PIP, before meaningfully completing the contemplated assistance, training, weekly check-ins, and fifteen-day checkpoints.
42. Following Plaintiff's termination, Defendant employed a white nurse as her replacement.
43. Plaintiff alleges that Defendant subjected her to discriminatory discipline and termination because of her race, as reflected in the circumstances surrounding the disputed performance criticisms, changing requirements, disciplinary process, and replacement by a white nurse.
44. Plaintiff further alleges that Defendant escalated its disciplinary treatment and terminated her in retaliation for protected activity.
45. As a direct and proximate result of Defendant's conduct, Plaintiff lost employment, wages, and employment benefits.

## First Cause of Action
**Race Discrimination in Violation of Title VII**
**Against Virtus Academy of South Carolina**

46. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

47. Plaintiff is African American and is a member of a protected class under Title VII.

48. Defendant subjected Plaintiff to discriminatory discipline and terminated her employment under the circumstances alleged above.

49. Defendant replaced Plaintiff with a white nurse.

50. Race was a motivating factor in Defendant's treatment of Plaintiff and its decision to terminate her employment.

51. Defendant's stated reasons for terminating Plaintiff were pretextual, in whole or in part, for race discrimination.

52. Defendant's conduct violated 42 U.S.C. § 2000e-2(a)(1) and § 2000e-2(m).

53. As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, lost employment benefits, and other damages recoverable under Title VII.

## Second Cause of Action
**Retaliation in Violation of Title VII**
**Against Virtus Academy of South Carolina**

54. Plaintiff incorporates by reference the preceding factual allegations as if fully set forth herein.

55. Plaintiff engaged in activity protected by Title VII by opposing discriminatory employment practices and engaging in protected EEOC activity.

56. Defendant knew of Plaintiff's protected activity before taking the adverse employment actions alleged herein.

57. Following Plaintiff's protected activity, Defendant subjected her to materially adverse treatment, culminating in the termination of her employment on December 17, 2025.
58. The timing of Defendant's actions, its handling of Plaintiff's complaints, and the circumstances surrounding the disputed disciplinary process support an inference of retaliation.
59. But for Plaintiff's protected activity, Defendant would not have terminated her employment when and as it did.
60. Defendant's conduct violated 42 U.S.C. § 2000e-3(a).
61. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, lost employment benefits, and other damages recoverable under Title VII.

## VI. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award the following relief:

A. A declaration that Defendant discriminated and retaliated against Plaintiff in violation of Title VII;

B. Back pay and lost employment benefits;

C. Reinstatement or, if reinstatement is inappropriate, front pay;

D. Compensatory damages in an amount to be determined by the jury, as supported by the evidence and permitted by law;

E. Appropriate equitable relief;

F. Reasonable attorney's fees and costs;

G. Prejudgment and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

S/Reagan Singletary
Reagan Singletary, Esquire
THE SINGLETARY GROUP, LLC
297 South Metts Street
St. George, SC 29477
Phone: 803-552-6957
reagan@thesingletarygroup.com
Attorney for Plaintiff

November 16, 2026
St. George, South Carolina